UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DORISE ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16 CV 1576 RWS |
| ) | |
| NORTH AMERICAN CENTRAL ) | |
| SCHOOL BUS d/b/a ) | |
| Missouri Central School Bus and ) | |
| ALBERT CARMEL, ) | |
| ) | |
| Defendants. ) | |

## **MEMRANDUM AND ORDER**

Plaintiff Dorise Robinson was a bus driver for her former employer Defendant North American Central School Bus, LLC ("NACSB"). Robinson filed this case in state court asserting various claims of employment discrimination. NACSB removed the case to this Court and filed a motion to dismiss. I granted the motion to dismiss in part. The sole claim remaining in the case is a hostile work environment claim. NACSB has filed a motion for summary judgment. Because Robinson has failed to provide evidence that the alleged harassment was sufficiently severe or pervasive enough to alter the conditions of Robinson's employment and created an abusive working environment, I will grant NACBS's motion.

*Background*

The following information is taken from the Parties' statements of undisputed facts [Doc. Nos. 54 and 63.1] and from the record. NACSB is a school bus company that provides student transportation services to students in and around St. Louis, Missouri. Robinson was hired as a part-time bus driver at the company's St. Louis Terminal in the summer of 2012. The St. Louis Terminal employed approximately 124 drivers during the regular school year. Drivers bid on and were assigned bus routes for the school year. [Doc. No. 54, Ex. A, Pl.'s Depo. at 40:5 – 41:13] The routes had separate morning and afternoon components (shifts).

When Robinson began her employment she received and signed NACSB's "Harassment Free Workplace" policy. [Id. at 28:18 – 29:23; Ex. B ¶ 7][1] This document informed employees that they have a right to work in an environment free from harassment based on any characteristic protected by law including gender. The policy provided employees with instructions on how and when to report workplace harassment. In addition, NACSB posted its "Open Door Policy"

---

[1] In her response to NACSB's statement of undisputed facts Robinson inexplicably denied that that she received a copy of the policy. In support of her denial Robinson cites the very citations from her deposition that NACSB cites in support of the proposition. In her deposition Robinson confirms that she received and signed the policy. Robinson employs the same tactic in many of her other responses to NACSB's statement of undisputed facts. She denies the stated fact and cites to either the same parts of the record that supports NACSB's contention or to a part of the record that does not support Robinson's denial.

on the employee bulletin board of the St. Louis Terminal. [Id. at Ex. B ¶ 7][2] The policy states that all employees are encouraged to the express concerns or complaints with the location manager (referred to as the Contract Manager or Location Manager). If unsatisfied with the location manager's response, the employee is directed to contact the regional manager and provided with the appropriate contact information.

Albert Carmel was employed as a dispatcher in the St. Louis Terminal during Robinson's employment. Carmel was not a supervisor and did not have any supervisory authority over Robinson. [Id. at Ex. A, Pl.'s Depo. at 62:14 – 64:6; Ex. B ¶ 6][3] Robinson asserts that Carmel's behavior in the workplace created a hostile work environment for her. Robinson worked for NACSB from the summer of 2012 through May 2016. She voluntarily elected not to return to work for the 2016-2017 school year. She asserts that she decided not to return to her work in August of 2016 at the "last minute" because of the "way [she] was treated." Instead she pursued her own home healthcare business. [Id. at Ex. A, Pl.'s Depo. at 152:18 – 155:6 and 195:4 – 200:6]

In her amended complaint Robinson asserted claims for a hostile work

---

[2] In her response to NACSB's statement of undisputed facts Robinson denies this fact and cites to pp. 30-34 of her deposition in support of her denial. Yet that deposition testimony only establishes that Robinson claims that she never noticed the policy on the bulletin board. It does not establish the policy it was never posted.

[3] This is another example of Robinson denying a proposition in her response to NACSB's statement of undisputed facts that cites the very citations from her deposition that NACSB cites in support of the proposition. Robinson's deposition testimony does not state that Carmel was a supervisor. In her own statement of disputed fact [Doc. No. 63.1] Robinson asserts that Carmel was a supervisor and in support of this proposition offers an Employee Corrective Action form dated November 14, 2012. In that document Carmel received an oral warning to remain professional when talking to other employees. It does not establish that Carmel was a supervisor.

environment, disparate treatment, and retaliation based on gender pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  [Doc. No. 11]  She also asserted a claim of retaliation based on gender pursuant to 42 U.S.C § 1981.  Robinson named Carmel as a defendant.  NACSB and Carmel filed a motion to dismiss asserting that Robinson's claims were unexhausted or failed to state a claim for relief.  On April 24, 2017, I granted the motion to dismiss, in part, and permitted Robinson to proceed solely on her hostile work environment claim against NACSB, the only claim she exhausted in her Equal Employment Opportunity Commission charge.[4]  Robinson's prayer for relief requests damages for mental anguish and emotion distress and seeks punitive damages.  NACSB has moved for summary judgment on Robinson's hostile work environment claim.  Robinson opposes the motion.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>Lynn v. Deaconess Medical Center</u>, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those

---

[4] See that order for a full explanation of the dismissal of the other claims.  Suffice to say that the other claims have been dismissed and Camel has been dismissed as an individual defendant in this matter.

portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-

discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316 (8th Cir. 1995). A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Discussion*

Robinson asserts a claim for a hostile work environment based on gender under Title VII. "In order to establish a claim of hostile work environment sexual harassment by non-supervisory co-workers, a plaintiff must establish that (a) she belongs to a protected group; (b) that she was subject to unwelcome sexual harassment; (c) that the harassment was based on sex; (d) that the harassment affected a term, condition, or privilege of employment; and (e) that the employer knew or should have known of the harassment and failed to take proper remedial action." Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 965 (8th Cir. 1999).

"Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 566 (8th Cir. 2000) (cleaned up). A court must keep in mind that "[n]ot all unpleasant conduct creates a hostile work environment." Id. (cleaned up). Rather, the plaintiff must show that she was singled out because of her gender and was subjected to discriminatory conduct that was severe and pervasive. Id. A court is required to look at all of the attendant circumstances, including the frequency of the purported harassment; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether

it unreasonably interferes with the employee's work performance.  <u>Willis v. Henderson</u>, 262 F.3d 801, 809 (8th Cir. 2003).

Robinson was employed by NACSB from the summer of 2012 through May 2016.  She alleges that the company bus dispatcher, Albert Camel, created a hostile work environment.  Robison claims that Carmel used profanity in the workplace and that he often referred to women as "bitches."  He used the term in talking about females in general and Robinson could not recall a time when he called or referred to a specific co-worker as a bitch.  [Doc. No. 54, Ex. A, Pl.'s Depo. at 68:13 – 69:13]   At least one NACSB employee, Robin Faulker, has stated that she overheard other female employees calling each other bitch at work in a playful way.  [Id. at 118:10 – 120:15]  Robinson testified at her deposition that it was not unusual for employees, including women, to use profanity at the St. Louis Terminal.  [Id. at 117:18 – 120:23]

The focus on Robinson's hostile work environment claim is on the actions directed at her by Carmel.  She claims she had several incidents with Carmel in early 2014.  Robinson testified that sometime prior to May 2014, Carmel assigned Robinson to drive a charter bus route.  Robinson refused the assignment because she felt the bus wasn't safe enough to drive the route.  Carmel disagreed with Robinson, felt the bus was safe to drive, and refused to provide her with a different bus.  Robinson refused the assignment and Carmel had to assign another

driver to take the route. The next day, Robinson overheard Carmel telling another driver about the incident. He told the other driver that if he had not been able to find a replacement driver for the charter route he would have had to drive the bus himself. If it had come to that, Carmel said that he would "have to get the bitch fired" for refusing the route (referring to Robinson). [Id. at 54:3 – 55:10; 60:3-8]

Robinson also testified that Carmel gave away an afternoon bus route one day because Carmel thought she was late for that shift. Robinson said that she wasn't late, she was in the building. She raised her concern to the station manager who paid her for the day even though she did not drive that afternoon route. [Id. at 41:10 – 46:15] Robinson does not recall the year this incident happened but recalled the date was September 30 (it could have been in 2013, 2014, or 2015). [Id.]

In another incident Robinson walked in to the dispatch office where Carmel was engaged in a heated argument with another driver. Other employees were also in the office. After that driver left the office Carmel looked at Robinson and spoke angrily to her. Robinson cannot recall what Carmel said to her exactly but recalls that he called her a bitch and that she "interpreted" his comments to be a threat to hit her in the head with a baseball bat if Robinson challenged his authority. [Id. at 69:23 – 73:19] Robinson does not recall exactly when this incident occurred but it was before May, 14, 2014.

9

Robinson claims that Carmel referred to her as a bitch on one other occasion. She testified that she heard Carmel discussing her job performance with the dispatch supervisor and overheard Carmel say that he felt that Robinson had a decent job performance but that "the bitch always late." [Id. at 63:21 – 65:15] Robinson does not recall when this incident took place. [Id. at 64:10-12] She testified that she had been late before. [Id. at 66:18-20]

On May 6, 2014, Robinson submitted a written complaint to the Acting Contract Manager, Kathy Gilbert, stating that

> since November 25, 2013, Carmel has continued to make discriminatory comments directed to me and to other employees about me and in the workplace. Other employees that don't work on my shift have told me about these comments also. He shouts verbal commands to me that are gender based. These comments are [defamatory] and profanity based.

[Doc. No. 54, Ex. G]

Gilbert forwarded Robinson's statement to NACSB's human resources department. [Doc. No. 54, Ex. A, Pl.'s Depo. at 40:5 – 41:13] Robinson does not recall a single specific time that Carmel called her a bitch after she submitted her complaint in May 2014. [Id. at 68:4-12][5]

Robinson filed her EEOC charge on December 8, 2014. When NACSB

---

[5] Robinson also testified that she was involved in two altercations with female co-workers and suggests that Carmel was involved in these incidents. The facts do not support this allegation. In the first incident Robinson was involved in was a physical altercation with Lashonika Strong. Both Robinson and Strong received written warning issued by Contract Manager Jim Koons, not Carmel. [Doc. No. 54, Ex. B, Koons' Aff. ¶ 13] In the other incident, Robinson got into a physical altercation with Kawanda Mason. Both Robinson and Mason were suspended, but after investigation, Robinson was reinstated with pay and Mason was terminated. [Doc. No. 54, Ex. A, Pl.'s Depo. at 176:12 – 177:24] Nothing indicates that Carmel was involved in this incident.

learned of Robinson's charges in January 2015, Rick Vines, the corporate Vice President of Human Resources, conducted an internal investigation which included interviewing Robinson, Carmel, and other drivers. The investigation resulted in Carmel receiving counselling and a written reprimand on January 16, 2015, about using "offensive language in the dispatch area, specifically referring to female employees as bitch." [Doc. No. 54, Ex. B, Koons' Aff. ¶ 9; Ex. H]

Robinson's attempt to establish a hostile work environment claim based on the alleged conflicts she had with Carmel fails to establish a prima facie case of discrimination. Robinson testified that she felt the reason Carmel did not like her was because she was not "in the 'in' crowd, I didn't try to fit in, I came there to do my job, and that was it." [Doc. No. 54, Ex. A, Pl.'s Depo. at 86:15-20] Robinson testified that he treated other female workers differently that Robinson because they were in the "in" crowd. [Id. at 86:21 – 87:20]

Robinson has not provided sufficient evidence to establish that Carmel's actions affected a term, condition, or privilege of employment. Robinson worked for NACSB from the summer of 2012 until May 2016. The three incidents she describes where Carmel referred to her as a bitch were not severe and pervasive. They all occurred sometime before May 2014. Robinson cannot recall any instance after that date that Carmel used that term in reference to Robinson. These isolated incidents, although rude and unpleasant, do not rise to the level of

creating a work environment "so intimidating, offensive, or hostile that it poisoned the work environment." Scusa, 181 F.3d at 967. It is undisputed that vulgar language was used in Robinson's workplace. Robinson's evidence is insufficient to establish that Carmel's behavior created a workplace permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the Robinson's employment and created an abusive working environment.

Moreover, NACSB took proper remedial action in response to Robinson's complaint about Carmel in May 2014. Robinson does not offer any evidence that Carmel called call Robinson a bitch after that date. When Robinson filed her EEOC charge in December 2014, NACSB immediately took action after receiving the charge in January 2015. Carmel was counseled and reprimanded about his use of offensive language at the office.

As a result, I find that Robinson has failed to establish a prima facie case of a hostile work environment based on gender. Robinson also brought a claim for constructive discharge in which she alleges she did not return to work in the fall of 2016 because of Carmel's actions. This claim fails because it relies upon the establishment of Robinson's hostile work environment claim.

Finally, NACSB has filed a motion to exclude Robinson's proposed expert opinion testimony from her chiropractor in support of her damages. I will deny

this motion without prejudice as moot.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant North American Central School Bus's motion for summary judgment [52] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant North American Central School Bus's motion to exclude Plaintiff's expert [55] is **DENIED without prejudice as moot**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of May, 2019.